## In re Anonymous No. 14 D.B. 77

Disciplinary Board Docket no. 14 D.B. 77.

REATH, *Board Member*, August 9, 1978—The Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and order of private discipline. For reasons appearing below, we believe that the original recommendation of the hearing committee, for a three-month suspension, is too harsh and that respondent should receive a private reprimand by this board.

## I. STATEMENT OF THE ISSUES

The hearing committee found that respondent had violated Disciplinary Rule 1-102(A)(3), (A)(4) and (A)(6) and recommended a three-month suspension.

The gravamen of the charge was that respondent signed a false affidavit regarding an allegedly lost savings passbook in order to withdraw funds which she had previously agreed were to be held in a blocked account as security for an open claim against respondent for having endorsed X's name to a check without X's authority and depositing it into her own business account.

## II. STATEMENT OF FACTS

Respondent is a practicing lawyer, age 36, mother of [ ] children with a [ ] child expected some six months hence. She was admitted to practice in Pennsylvania in 1974 at the age of 32.

In 1972, while still a law student, respondent had a number of accounts on deposit with bank, including an account for a real estate business she conducted with her husband.

Bank had been notified by a payee of a check that his endorsement to the check was done without authority and that respondent had deposited the check in her business account when she was not entitled to the funds. On receiving this notice, bank put a "hold" at least on her business account and it seems quite likely that all other accounts that were had in her name or in trust for her children were also blocked. This is an unresolved issue of fact that can never be proved or disproved. Respondent claims that all of the accounts were improperly

blocked. The general counsel for the bank, who represented the bank in this matter, says that this is not so.

In any event, respondent concedes that on December 20, 1972, she agreed to surrender her individual passbook (balance approximately $2,500) to the bank's attorney, who agreed to hold the passbook as collateral security for bank's claim against her for indemnity arising out of a charge for a forged check.

Meanwhile, suit had been brought by payee against bank and respondent to collect on the forged checks (approximately $2,000).

As of October 1974, the lawsuit had not yet been resolved. Respondent at that time had attempted, without success, to get the attorney for the bank to release $1,000 to respondent.

In the spring of 1975, respondent received a routine form letter from the bank to bring in the passbook to have the interest posted. She took the letter to a bank clerk and advised that she did not have the passbook but inquired as to the procedure to follow in withdrawing funds.

Therefore, on May 19, 1975, she executed a lost savings fund deposit book affidavit in which she stated, under oath, "And Whereas, it appears that said . . . Deposit Book . . . has been lost or mislaid," etc. In consideration of the payment to her of the balance then due of $2,754.02, she agreed to indemnify the bank against any losses it might incur by releasing the money.

By December of 1976, payee on the check had recovered a favorable award in arbitration against the bank. The bank, in turn, had prevailed in its indemnity claim against respondent. When respondent advised bank that she would not appeal

this adverse judgment, the bank paid the judgment—and in seeking to apply the proceeds of the escrowed account, to recoup its loss, bank's attorney discovered that respondent had, in May of 1975, withdrawn the funds. Bank's attorney immediately notified respondent and she agreed to repay the judgment against her with interest, in installments, but she refused the bank's attorney's demand for immediate payment. Bank's attorney told respondent that if she did not pay up in full at once, disciplinary proceedings would be brought against her. When respondent did not pay, these proceedings were brought.

## III. FINDINGS AND RECOMMENDATIONS OF THE HEARING COMMITTEE

The hearing committee rejected respondent's contention that the affidavit was not false because of her assertion that the language in the lost passbook statement merely stated that "it appears" that the book is missing. They felt that the disciplinary counsel's charges had been fully proved, found that respondent had violated Rule 1-102(A)(3), (A)(4) and (A)(6) and recommended that respondent be suspended for a period of three months.

## IV. ORAL ARGUMENT TO DISCIPLINARY HEARING PANEL

On June 21, 1978, Messrs. Anderson, Henry and Reath, serving as chairman, heard oral argument. Respondent's counsel's argument was that the discipline imposed was entirely too harsh, considering

respondent's prior record and the circumstances involved. During oral argument the hearing panel gave respondent an opportunity to state orally her position, in light of the fact that disciplinary counsel had argued in its brief: (1) that no restitution had been made; and (2) that respondent showed no evidence of contrition or any recognition that she had done anything wrong. At this point, respondent reasserted what her counsel had argued, that she felt that she had been shabbily treated by the bank in that they, without authority, had blocked all of her accounts and had used that improper action as leverage to force her to agree to the escrow provision of her personal passbook. She persisted in her view that the affidavit which she signed was not false, but stated that if it was determined that it was false, then, but only then, was she sorry for what she had done. The hearing board was not a little disappointed by the fact that, either because of immaturity or stubbornness, she was unwilling to admit that she had done anything wrong or that her actions in withdrawing the money in the blocked account were in part motivated, however improperly at the time, by anger at the way in which the bank had treated her.

Under the special circumstances of this case, however, we feel any form of suspension would be inappropriate. Not only would this be harsh and damaging to respondent in her efforts to get started in her practice—but the offense that she had committed was not in connection with any representation of a client that would cause harm to the general public.

After the hearing was concluded, the board received a letter from the two members of the hearing

committee who participated in this matter, indicating that, in their view, the original recommendation for a three-month suspension was too severe for two reasons: (1) because the committee's report was filed late; and (2) because such a suspension would harm respondent's law practice. Thereafter, assistant disciplinary counsel, in a letter to the hearing committee under date of June 29, 1978, reported that in light of respondent's agreement to satisfy her indebtedness to the bank, and in light of the revised recommendations of the hearing committee as contained in their letter of June 22, 1978, disciplinary counsel was now influenced to modify its recommendation from three months to "one month or less in duration and without the necessity of notifying clients of such suspension as normally required by Rule 217 of Pa.R.D.E."

It seems clear to us that respondent knowingly signed a false affidavit and thereby succeeded in removing funds from the bank which she knew she had no right to. In this regard, we adopt and approve that portion of disciplinary counsel's brief at page 13 quoted in the footnote below.[1]

---

1. A similar plea for a "generous and mild" disposition by a Pennsylvania attorney who lied under oath in a deposition taken in aid of execution involving a *personal* judgment was denied and the attorney was suspended for one year: Montgomery Bar Association v. Hecht, 456 Pa. 13, 317 A. 2d 597 (1974). The Supreme Court cited with approval Rule 17-3 (now Rule 203, Pa.R.D.E.) which provided that misconduct of an attorney shall be grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship. Mr. Justice Pomeroy in Hecht observed:

"We are reminded of the comment of Daniel Webster: 'Tell me a man is dishonest, and I will answer he is no lawyer. He

We might have had more compassion on her problem—had she been more candid in admitting her wrongful act. We reject, out of hand, her continued protestation that her affidavit was not false.

The board is also concerned regarding the large amount of litigation to which, considering her short time at the bar, she has been a party—and the number of judgments outstanding against her.

### ORDER

By the Board—And now, July 14, 1978, pursuant to §89.205 of the Disciplinary Board Rules, it is directed that [respondent], shall appear before the disciplinary board to receive a private reprimand at the next meeting of the board in September, 1978. A notice of the time and place to receive the private reprimand will be sent by the secretary of the board to respondent.

---

cannot be, because he is careless and reckless of justice; the law is not in his heart, is not the standard and rule of his conduct.' D. Webster, Speech to the Charleston, South Carolina Bar, May 10, 1847." Hecht supra, footnote no. 9.

The words of Webster apply to this respondent who has by her conduct shown disdain for the truth. Hecht, for his acts of misconduct although personal in nature, was suspended by the Supreme Court for one year.